UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:22-cv-1070

| | |
|---|---|
| DMJ HOLDING, LLC<br><br>Plaintiffs,<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff DMJ Holding, LLC, complains and alleges as follows:

## PARTIES

1. DMJ Holding, LLC ("DMJ") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business in Guilford County, North Carolina.

2. Auto-Owners Insurance Company ("Defendant") is a corporation organized under the laws of the State of Michigan with its principal place of business in Michigan.

3. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship because the members of DMJ are citizens of North Carolina.

4. Venue is proper pursuant to 28 U.S.C. §1391(b) because the property that is the subject of this matter is located within this District and Defendant is subject to the Court's personal jurisdiction.

1

## FACTS

5. Defendant issued a Tailored Protection Insurance Policy (number 21415-3543833-21) with commercial property coverage to DMJ effective July 9, 2021 to July 9, 2022 (the "Policy"). A true and correct copy of the Policy is attached hereto as <u>Exhibit 1</u>.

6. The Policy provided property insurance coverage for a wedding and events venue owned by DMJ located at 9500 Mount Carmel Road in Stokes County, North Carolina (the "Property").

7. The Policy provides coverage for the Property on a "replacement cost" basis. Under the terms of the Policy, Defendant will settle losses on an actual cash value ("ACV") basis and then allow the insured to make a claim for the additional amount for replacement cost value ("RCV") once the property is actually repaired or replaced.

8. The Policy defines ACV as "the cost to repair or replace lost or damaged property with property of similar quality and features reduced by the amount of depreciation applicable to the lost or damaged property <u>immediately prior to the loss.</u>" (Policy, form 64326 (emphasis added) [Exh. 1 at 65]). Depreciation is defined as "a decrease in value because of age, wear, obsolescence or market value and includes: (a) the cost of materials, labor and services; (b) any applicable taxes; and (c) profit and overhead necessary to repair, rebuild or replace lost or damaged property." (*Id*.).

9. The additional amount for RCV is based on the lesser of (1) the limit of insurance, (2) the cost to replace the lost or damaged property with other property of comparable material and quality, or (3) the amount actually spent that is necessary to repair or replace the lost or damaged property.

10. On March 13, 2022, the Property suffered significant damage as a result of a fire (the "Loss").

11. DMJ promptly reported the Loss to Defendant and notified Defendant of its intent to settle on an ACV basis and then make a claim for RCV under the Policy once repairs were completed.

12. Defendant's agents first inspected the Loss on or about March 22, 2022.

13. Between March 22, 2022 and October 13, 2022, Defendant's agents prepared estimates for necessary repairs to the Property.

14. Defendants' last estimate as of the time of this filing estimated the RCV for the Loss as $994,131.19 (subject to open items and any subsequently discovered damages). A true and correct copy of the October 13, 2022 estimate is attached hereto as Exhibit 2.

15. Defendant determined that the depreciation of the damaged Property was $191,793.38 by depreciating the RCV of those repair items designated as being covered under "Dwelling" coverage by a certain percentage. (*See* Exh. 2 at 98; *see also* Ltr. from Ackerman to Pegelow (Oct. 14, 2022) [Exh. 3]).

16. However, rather than settling DMJ's Loss on an ACV basis by withholding only the estimated depreciation from its settlement payments to DMJ, Defendant is withholding an additional $159,995.61 of the estimated cost of repairs for items it designated as part of "Paid When Incurred" coverage in its estimate. (*See* Exhs. 2-3).

17. Unlike most items in the October 13 Estimate, where a percentage of RCV was deducted as depreciation to determine the ACV that is immediately payable under the Policy, the October 13 Estimate withholds 100% of items classified as "Paid When Incurred." (*See* Exh. 2).

18. On July 12, 2022, DMJ's public adjuster, Tim Pegelow, began asking Defendant for an explanation of why it was classifying certain items as "Paid When Incurred" and applying a 100% depreciation rate to those items.

3

19. When Mr. Pegelow received no response, he followed up by email on July 19, 2022. After receiving an out-of-office message for the adjuster assigned to the Loss, Mr. Pegelow again followed up on July 21, 2022 and included the Large Loss Claims email address for Defendant as instructed in the adjuster's automatic reply.

20. Mr. Pegelow's office received a revised estimate and a supplemental payment of ACV from Defendant on or about August 4, 2022. However, his question regarding "Paid When Incurred" items was still met with silence. On August 23, 2022, Mr. Pegelow again requested that Defendant explain and reconsider its methodology to determine the amount of pre-repair ACV payments it was making. Mr. Pegelow requested an in-person meeting and also requested that Defendant's adjuster call him to discuss the issue. Those things did not happen.

21. Instead, the adjuster simply forwarded Mr. Pegelow's August 23, 2022 email to Defendant's agents at J.S. Held for a response. J.S. Held responded by email the same day, pledging to review the building-specific questions Mr. Pegelow posed.

22. Mr. Pegelow responded to J.S. Held and the adjuster on August 24, 2022. He closed his August 24, 2022 email, "It is more important for us to discuss Auto-Owners' response to the ACV and the insured's meeting request." Yet again, Mr. Pegelow's inquiries on behalf of DMJ about the ACV, including the "Paid When Incurred" items, remained unanswered.

23. When Mr. Pegelow again pushed J.S. Held for an answer—because Defendant continued to avoid the issue—J.S. Held responded in a September 21, 2022 email that J.S. Held was instructed by Defendant to mark certain items as "Paid When Incurred." The email continued, "[a]ny additional questions regarding the 'Paid When Incurred' should be directed to Auto Owners Insurance."

4

24. Mr. Pegelow again tried to get an explanation of the basis in the Policy for Defendant's decision to withhold 100% of the RCV of certain items it instructed J.S. Held to classify as "Paid When Incurred" in an October 3, 2022 email Defendant. In response, Defendant ignored the question, responding that:

> Auto-Owners Insurance has not changed our position on items listed on the estimate labeled paid when incurred. The insured would turn in receipts/pictures of work completed and list the line item number from the Xactimate estimate for consideration for expense incurred.

(Exhibit 3)

25. On October 28, 2022, DMJ's counsel sent a letter to Defendant demanding that it provide a reasonable explanation of the "Paid When Incurred" categorization or immediately make a supplemental payment of the appropriate ACV owed in accordance with Defendant's own repair estimate. A true and correct copy of the October 28, 2022 letter is attached hereto as Exhibit 4.

26. Defendant responded by letter dated November 7, 2022. After citing provisions of the Policy regarding RCV and the definition of ACV, Defendant argued that "Equipment that is needed, such as a crane and operator, do not make up the Actual Cash Value of damaged property, as they were not present at the time of the loss. We agree that they will be required in order to effectuate repairs, but they are only owed when the cost is incurred." Letter from Ackerman to Marston (Nov. 7, 2022) (attached hereto as Exhibit 5).

27. The Policy language, including the definition of ACV, does not support Defendant's arbitrary treatment of some repair items as "Paid When Incurred." Nor is Defendant's November 7, 2022 explanation of its interpretation supported by the plain language of the Policy.

28. ACV is defined as "the cost to repair or replace lost or damaged property…reduced by the amount of depreciation applicable . . . <u>immediately prior to the loss.</u>" (Exh. 1 at 65). The ACV of DMJ's damaged Property necessarily includes the cost of all equipment, labor, and other expenses that Defendant acknowledged will be necessary to restore the Property to its pre-loss condition. The plain language of the Policy does not permit Defendant to deduct 100% of any portion of the cost to effectuate repairs to DMJ's Property unless those repairs were necessary "immediately <u>prior to</u> the loss."

29. Defendant's arbitrary and capricious interpretation is further belied by the fact that it's October 13, 2022 Estimate treats equipment and labor disparately. For example, Defendant treated labor for "general demolition" and expenses for scaffolding to repair the roof at the Property as "Paid When Incurred," calculating the ACV of these necessary components of repairs as $0.00. (*See* <u>Exhibit 2</u> at 4 (items 32-33, 36)). However, the ACV for the same components of repairs to the exterior of the property were calculated at full value. (*See id.* at 7 (items 60, 63-64)).

## FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

30. The allegations contained in Paragraphs 1-29 are incorporated by reference as if fully set forth herein.

31. There is an actual case and controversy between DMJ and Defendant concerning the interpretation of the Policy with respect to the determination of the ACV of the Property.

32. Pursuant to 28 U.S.C. § 2001, the Court may declare the rights and legal obligations of the parties. Specifically, the Court may declare that pursuant to the Policy, the full value (i.e. 100%) of the estimated costs of materials, labor, and equipment necessary to repair damaged property may not be deducted as depreciation when calculating the ACV of damaged property.

6

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

33. The allegations contained in Paragraphs 1-32 are incorporated by reference as if fully set forth herein.

34. The Policy is a valid and enforceable contract.

35. DMJ complied with all material terms and conditions for coverage under the Policy.

36. Defendant's obligation to pay DMJ the ACV of damages to the Property caused by the Loss is not conditioned on the completion of repairs.

37. Defendant's refusal to pay 100% of certain components of the repairs necessary to restore the Property until those repairs are actually completed is a violation of the terms of the Policy.

38. Defendant has breached the Policy by its refusal to pay the full ACV for all of the Property that was damaged as a result of the March 13, 2022 fire.

39. As a result of the breach of contract by Defendant, DMJ has been injured in an amount of no less than $159,995.61.

## THIRD CAUSE OF ACTION
**(Bad Faith)**

40. The allegations contained in Paragraphs 1-39 are incorporated by reference as if fully set forth herein.

41. Defendant acted, and continues to act, in bad faith by its refusal to pay all sums owed to DMJ after recognition of valid claim.

42. Defendant has acknowledge that certain items designated as "Paid When Incurred" in its repair estimates are necessary elements of the cost to repair or replace damages to the

Property as a result of the Loss. Despite this acknowledgement, Defendant has withheld 100% of the value of these repair items from its payments of ACV to DMJ.

43. Defendant's refusal to meet its contractual obligations is not grounded in an honest disagreement or innocent mistake. Instead, Defendant seeks to delay and minimize the amount paid on the Loss by artificially increasing the amount of "depreciation" withheld from its ACV payments.

44. Defendant's aggravating and outrageous conduct as alleged herein includes malice, insult, rudeness, and oppression. Defendant has intentionally calculated depreciation to minimize ACV payments that are immediately payable, ignored DMJ's multiple requests for an explanation, and arbitrarily applied its intentional misinterpretation of the Policy.

45. Defendant's outrageous and oppressive conduct has caused substantial delay in payment of DMJ's valid claims for insurance coverage, is forcing DMJ to bear a much larger portion of the up-front costs of repair as a result of its refusal to pay the full ACV of the Loss, and attempts to improperly undervalue DMJ's valid claim.

46. Defendant engaged and is engaging in the foregoing unlawful conduct in order to avoid paying what is owed to DMJ under the terms of their insurance coverage.

47. DMJ is entitled to recover compensatory damages of at least $159,995.61, to be proven at trial and punitive damages as a result of Defendant's willful or wanton conduct in its handling of DMJ's claim.

**FOURTH CAUSE OF ACTION**
**(Violation of N.C. Gen. Stat §§ 58-63-15 and 75-1.1)**

48. The allegations contained in Paragraphs 1-47 are incorporated by reference as if fully set forth herein.

8

Case 1:22-cv-01070-WO-JLW   Document 1   Filed 12/12/22   Page 8 of 11

49. Based on the facts alleged herein, Defendant has engaged, and continues to engage, in unfair and deceptive practices in or affecting commerce and unfair claims practices including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, specifically, the treatment of equipment, labor, and other components of the cost of repair as "Paid When Incurred";

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policy, specifically, it's refusal to even attempt to explain its categorization of repair items as "Paid When Incurred" until nearly four months after DMJ began seeking an explanation;

   c. Not attempting in good faith to effectuate prompt, fair and equitable settlements of Plaintiffs' claims in which liability has become reasonably clear;

   d. Compelling DMJ to institute litigation to recover amounts due under the Policy by offering substantially less than the amount that will ultimately be recovered in this action;

   e. Attempting to settle the ACV portion of DMJ's claim for less than the amount to which a reasonable insured would believe it was entitled;

   f. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage (i.e. ACV for property damage) in order to influence settlements under other portions of the insurance policy coverage (i.e. RCV coverage); and

9

g. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of DMJ's claims or for the offer of a compromise settlement, specifically, its arbitrary treatment of certain items as "Paid When Incurred"; and

h. Such other acts as may be adduced through discovery or at trial.

50. Defendant's intentional undervaluation of DMJ's claim for the ACV of its damaged Property amounts to an inequitable assertion of its power, is unethical, oppressive, unscrupulous, and substantially injurious to DMJ.

51. DMJ's actions constitute unfair claims settlement practices pursuant to N.C. Gen. Stat. § 58-63-15(11), and unfair or deceptive acts or practices in trade or commerce, in violation of N.C. Gen. Stat. § 75-1.1 *et seq*.

52. Defendant's actions described herein were in or affecting commerce.

53. DMJ have been damaged as a result of Defendant's conduct and is entitled to monetary relief of no less than $159,995.61 to address such past and ongoing conduct.

54. DMJ is further entitled to treble damages and attorneys' fees pursuant to N.C. Gen. Stat. §§ 75-16 and -16.1.

## JURY DEMAND

Plaintiff DMJ Holding, LLC, pursuant to Fed. R. Civ. P. 38, demands a trial by jury on all issues so triable of right.

WHEREFORE, Plaintiff respectfully prays the Court that:

1. The Court declare that the full value (i.e. 100%) of the estimated costs of materials, labor, and equipment necessary to repair damaged property may not be deducted as depreciation when calculating the ACV of damaged property under the Policy;

10

2. Plaintiff have and recover of Defendant compensatory damages in an amount to be proven at trial in excess of $75,000.00

3. The compensatory damages awarded against Defendant be trebled, pursuant to N.C. Gen. Stat § 75-16;

4. Plaintiff have and recover of Defendant punitive damages;

5. Plaintiff's reasonable attorneys' fees be taxed as part of the costs of this action pursuant to applicable law, including N.C. Gen. Stat. §§ 1D-45 & 75-16.1;

6. The costs of this action be taxed against Defendant;

7. Pre- and post-judgment interest be awarded as allowed by applicable law; and

8. Plaintiff have such other and further relief as the Court shall deem just and proper.

This, the 12th day of December, 2022

BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP


By: /s/ Kimberly M. Marston
Kimberly M. Marston
  N.C. State Bar No. 46231
Post Office Box 26000
Greensboro, NC 27420
Telephone: (336)-271-3145
Email: kmarston@brookspierce.com